NOSSAMAN LLP
STEPHEN P. WIMAN (SBN 54825)
swiman@nossaman.com
445 S. Figueroa Street, 31st Floor
Los Angeles, California  90071
Telephone:  213.612.7800
Facsimile:  213.612.7801

ZUKERMAN GORE BRANDEIS
 & CROSSMAN, LLP
John K. Crossman (*pro hac vice to be filed*)
Vyasa M. Murthy(*pro hac vice to be filed*)
Eleven Times Square
New York, New York  10036
Telephone:  (212) 223-6700
Facsimile: (212) 223-6422

Attorneys for Plaintiff TEN: THE ENTHUSIAST
NETWORK MAGAZINES, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEN: THE ENTHUSIAST NETWORK MAGAZINES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SCSW, LLC, <br><br> Defendant. | Case No.:  15-2296 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT, UNFAIR COMPETITION/FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING** <br><br> <u>JURY TRIAL DEMANDED</u> |

1   Plaintiff TEN: The Enthusiast Network Magazines, LLC alleges as follows:

2   **JURISDICTION AND VENUE**

3   1.   This is an action for trademark infringement and unfair competition/false

4   designation of origin under the Trademark Act of 1946, 15 U.S.C. §1051, et seq. as

5   amended (the "Lanham Act"), and for unfair competition and fraudulent

6   misrepresentation under the laws of the State of California.  This Court has original

7   jurisdiction over this action under 28 U.S.C. §§1331, 1332, and 1338 and has jurisdiction

8   over the state law claims under the principles of supplemental jurisdiction.

9   2.   The United States District Court for the Central District of California

10   ("Central District") is the proper venue for this action pursuant to 28 U.S.C. § 1391(b). ,

11   in that this is the District in which a substantial part of the events or omissions giving rise

12   to the claims hereinafter set forth occurred.

13   **PRELIMINARY STATEMENT**

14   3.   This is an action for complaint for trademark infringement, breach of

15   contract, unfair competition/false designation of origin, and fraudulent misrepresentation.

16   Plaintiff seeks preliminary and permanent injunctive relief, as well damages, and an

17   award of attorney's fees and costs pursuant to law.

18   **THE PARTIES**

19   4.   Plaintiff TEN: The Enthusiast Network Magazines, LLC ("TEN") is a

20   California limited liability company with its principal place of business in El Segundo,

21   CA 90245. TEN is a network dedicated to the enthusiast lifestyle, encompassing over 50

22   publications, 60 websites, 50 events, 1,000 branded products, the world's largest

23   automotive Video-on-Demand channel, and the world's largest action/outdoor sports

24   media platform ("Plaintiff's Goods & Services" or the "Goods & Services"). Trademarks

25   owned and used by TEN in connection with certain of the Goods & Services include, but

26   are not limited to, the marks "SUPER CHEVY" and "SUPER CHEVY SHOW"

27

28

2

1  ("Plaintiff's Marks" or the "Marks"), which Marks are at issue in this case. TEN operates

2  nationally, including distributing magazines in every state and holding events in various

3  states nationwide. TEN was previously known as Source Interlink Magazines, LLC

4  ("Source").

5      5.    Defendant SCSW, Inc. ("SCSW") is, upon information and belief, a

6  Delaware corporation with its principal place of business in Waco, Texas. Prior to

7  January 2015, SCSW held a written, contractual, revocable, limited license (the

8  "License") from TEN to use the Marks for certain defined goods and services in

9  accordance with the terms of such License, including the hosting of no fewer than ten

10 annual auto shows in various markets across the country (the "Licensed Events"). In or

11 about January 2015 SCSW lost its License when it breached the license agreement

12 between SCSW and TEN.

**THE FACTS**

**TEN Has Senior Rights to SUPER CHEVY SHOW**

15     6.    TEN has been continually using the marks "SUPER CHEVY" and "SUPER

16 CHEVY SHOW" ("Plaintiff's Marks" or the "Marks") in connection with the Goods &

17 Services, including distributing an automotive enthusiast magazine named "SUPER

18 CHEVY," maintaining and publishing www.superchevy.com, maintaining social media,

19 conducting and licensing automotive enthusiast events and shows (including the Licensed

20 Events), distributing videos syndicated on TEN's online platforms and social media, and

21 distributing automotive enthusiast merchandise throughout the United States, including

22 Texas, since at least 1973.

23     7.    TEN has senior rights to the Marks in connection with the Goods & Services

24 and the Licensed Events in the United States.

25     8.    The Marks have acquired secondary meaning in the minds of the consuming

26 public.

3

**COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT,
UNFAIR COMPETITION/FALSE DESIGNATION
OF ORIGIN, AND FALSE ADVERTISING**

1    9.    TEN has actively policed its market concerning use of the Marks for the

2    Goods & Services.

3    10.    As a result of, among other things, TEN's reputation for excellence in the

4    field of automotive enthusiast media, TEN's widespread distribution of "SUPER

5    CHEVY" magazines throughout the United States for over forty years, word of mouth,

6    and a firmly established footprint in the field of automotive enthusiast media in the

7    United States, the trade and consuming public readily identifies the names "SUPER

8    CHEVY" and "SUPER CHEVY SHOW" with TEN's Goods & Services. Accordingly,

9    Plaintiff's Marks have come to represent the extraordinarily valuable goodwill that

10   Plaintiff owns.

11   <u>**TEN's Relationship With SCSW**</u>

12   11.    Over the years, TEN has licensed the use of the Marks for uses including

13   production of apparel and toys and for use with television shows on SPEED Network.

14   12.    On November 4, 2009, TEN (then known as Source) and SCSW entered into

15   a written license agreement (the "Agreement") granting SCSW a limited, exclusive, fee-

16   bearing, revocable, right to use the mark "SUPER CHEVY" for automotive events

17   branded as "SUPER CHEVY SHOWS" conducted by SCSW at twelve racetracks located

18   around the United States (the "Licensed Events" or the "Events") in exchange for

19   payments and other performance by SCSW.

20   13.    A copy of the Agreement is annexed to this complaint as Exhibit A.

21   14.    Pursuant to the section 2(d) of the Agreement, during the Licensed Events,

22   SCSW was allowed to sub-license the Marks to the owners of the racetracks that host the

23   Events (the "Track-owners") solely for use with the Events. SCSW remained fully liable

24   to TEN if any of the Track-owners breached the terms of the Agreement.

25   15.    SCSW agreed to pay TEN an annual minimum guarantee to be paid over

26   ten installments throughout the year. If SCSW held more than ten Events utilizing the

27

28

4

1    Marks in the calendar year, then they agreed to pay TEN additional minimum guarantees

2    for each Event.

3        16.    The minimum guarantee amount payable by SCSW and the payment

4    scheduled was amended on an annual basis from 2010 to 2013.

5        17.    Pursuant to section 11 of the Agreement, titled "Ownership of Intellectual

6    Property Rights," SCSW agreed that TEN retained all right, title, and interest in and to

7    the mark "SUPER CHEVY." SCSW further agreed to not take any action to challenge or

8    contest TEN's intellectual property rights, and to not take any action to register or

9    attempt to register any marks associated with or resulting from the Licensed Events.

10       18.    Pursuant to Section 11(b)(i) of the Agreement, SCSW agreed that all

11   intellectual property rights associated with the Licensed Property belong exclusively to

12   TEN, that the goodwill attached to such Licensed Property belongs exclusively to TEN,

13   that the Licensed Property has secondary meaning in the minds of the public, and that all

14   use of the Licensed Property will inure to the benefit of TEN.

15       19.    Pursuant to Section 11(b)(i) of the Agreement, SCSW agreed that it will not

16   challenge or contest Licensor's Intellectual Property Rights in and to the Licensed

17   Property.

18       20.    Pursuant to section 12(c) of the Agreement, SCSW agreed that any failure to

19   make payments as required by section 7 of the Agreement would be a material breach of

20   the Agreement.

21                          **SCSW's Breach of the Agreement**

22       21.    In or about April 2012, SCSW registered "SuperChevy.com Show" in the

23   State of Texas as a trademark in SCSW's name. (the "Texas Registration").

24       22.    The Texas Registration was made without notice to TEN and without

25   authorization by TEN.

26       23.    The seeking and obtaining of the Texas Registration was a breach of the

27

28
                                         5

1  Agreement by SCSW.

2       24.    On October 2, 2014, SCSW sent TEN a letter purporting to terminate the

3  Agreement. A copy of the October 2, 2014 letter is annexed to this complaint as Exhibit

4  B.

5       25.    In the October 2 letter, SCSW made false statements as to purported

6  breaches of the Agreement by TEN.

7       26.    The October 2 letter acknowledged that prior to declaring a breach by TEN,

8  SCSW was obliged to give TEN advance written notice and an opportunity to cure such

9  breach. In that same letter, SCSW admitted that no such notice had been given.

10      27.    Aside from the fact that notice to cure had not been given to TEN, the

11  purported breaches of the Agreement cited by SCSW in the October 2 letter were not

12  material breaches, and could not form a basis to terminate the Agreement.

13      28.    In the October 2, 2014 letter, SCSW offered to purchase the "SUPER

14  CHEVY SHOW" events and brand from TEN.

15      29.    In response to the October 2 letter, on November 5, 2014, counsel for TEN

16  wrote to the attorneys who had written the October 2 letter. A copy of the November 5

17  letter is annexed to this complaint as Exhibit C.

18      30.    In the November 5 letter, TEN identified the October 2 letter as an

19  anticipatory repudiation of the Agreement. Accordingly, TEN demanded that SCSW

20  "reaffirm its obligations under the Agreement and its willingness to perform under the

21  Agreement." Also in that letter, TEN advised that "If [SCSW] does not reaffirm its

22  obligations in writing by November 17, 2014, we will consider its repudiation to be final,

23  in material breach of the Agreement, pursuant to Sections 12 (b), (c) and (f), including

24  without limitation breaches of Sections 4 and 7 of the Agreement, and [SCSW's]

25  payment obligations and obligations to hold Licensed Events."

26      31.    SCSW failed to reaffirm its obligations by November 17, 2014. Indeed,

27

28

**COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT,
UNFAIR COMPETITION/FALSE DESIGNATION
OF ORIGIN, AND FALSE ADVERTISING**

1   SCSW has never reaffirmed its obligations at any time. Accordingly, TEN treated

2   SCSW's repudiation as final.

3       32.    In November 2014, SCSW applied to register the mark "SUPER CHEVY

4   SHOW" in the United States Patent and Trademark Office for television programs and

5   the Events (cited as US Trademark Application Serial Number 86450668).

6       33.    SCSW's filing of a trademark application in the United States Patent and

7   Trademark Office for "SUPER CHEVY SHOW" was a breach of the Agreement.

8       34.    SCSW's filing of a trademark application in the United States Patent and

9   Trademark Office for "SUPER CHEVY SHOW" was a breach of, among other things,

10  Section 11(b)(ii) of the Agreement, which provides in part: "Licensee shall take no action

11  to register or attempt to register any trademarks, service marks or other identifiers of

12  source associated with the Licensed Events."

13      35.    SCSW's filing of a trademark application in the United States Patent and

14  Trademark Office for "SUPER CHEVY SHOW" constituted fraud on the United States

15  Patent and Trademark Office by SCSW.

16      36.    In January 2015, SCSW failed to make payment to TEN as required by the

17  terms of the Agreement.

18      37.    Pursuant to Section 12(j) of the Agreement, upon termination, SCSW was

19  obligated, inter alia, as follows: "Licensee shall assign and transfer to Licensor any

20  domain name registered by Licensee bearing or containing any trademark or service mark

21  of Licensor."

22      38.    In breach of the Agreement, SCSW has failed to assign and transfer to TEN

23  all domain names registered by SCSW bearing or containing the trademark or service

24  mark of Licensor, including without limitation, the trademark "SUPER CHEVY".

25  ///

26  ///

27

28

COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT,
UNFAIR COMPETITION/FALSE DESIGNATION
OF ORIGIN, AND FALSE ADVERTISING

**SCSW's Continued Infringement of the Marks**

39.    Since October 2, 2014, and continuing after November 17, 2014, SCSW has continued to use the Marks.

40.    Since October 2, 2014, and continuing after November 17, 2014, SCSW has used the Marks to promote events.

41.    Since October 2, 2014, and continuing after November 17, 2014, SCSW has misrepresented to the Track-owners, media companies, and others that SCSW, and not TEN, is the owner of the marks "SUPER CHEVY SHOW," "SUPERCHEVY.COMSHOW," and "SUPERCHEVY.COM."

42.    Since October 2, 2014, and continuing after November 17, 2014,  due to SCSW's misrepresentations, several Track-owners have done business with SCSW and have refused to do business with TEN.

43.    SCSW continues to misrepresent itself as the owner of the Marks.

44.    Upon information and belief, SCSW is attempting to enter into contracts, including but not limited to sponsorship and merchandising agreements related to the Events, using the Marks and representing that SCSW are the owners of the marks and the goodwill the Marks represent.

45.    SCSW is fully aware that TEN is the rightful owner of the Marks.

46.    SCSW continues to maintain and publish www.superchevyshow.com.

47.    On February 20, 2015, SCSW issued a press release stating that SCSW had partnered with the Velocity Network ("Velocity") to produce and promote a program titled "SUPER CHEVY SHOW."

48.    On February 24, 2015, TEN sent Velocity a letter notifying them of SCSW's infringement and misrepresentation. TEN sent similar letters to entities associated with the purported "SUPER CHEVY SHOW" program.

49.    TEN has also sent letters notifying the Track-owners of SCSW's

**COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT, UNFAIR COMPETITION/FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING**

infringement and misrepresentations. However certain Track-owners continue to work with SCSW due to confusion as to who is the rightful owner of the Marks.

50. SCSW's infringing use of the marks "SUPER CHEVY," "SUPER CHEVY SHOW," "SUPERCHEVY.COMSHOW," and "SUPERCHEVY.COM." (the "Marks and Related Marks") has caused and if unchecked will continue to cause confusion among the Track-owners, the trade, and the consuming public.

51. SCSW's infringement and misrepresentations are for the purpose of trading upon TEN's business reputation and goodwill inherent in the Marks with the intent to cause confusion to the trade and consuming public in order to misappropriate the Events and the Marks.

52. None of SCSW's conduct in violation of the Agreement and after termination of the Agreement, set forth above, is, or ever was, authorized.

53. Any potential harm to SCSW for ceasing to misappropriate the Marks would be minimal in comparison to the harm being suffered by TEN.

54. SCSW's infringement, misappropriation, and misrepresentation are willful. SCSW has continued in this conduct despite demands by TEN that it cease and desist.

55. TEN has performed all of its obligations under the Agreement.

56. As a result of SCSW's aforesaid conduct, TEN has suffered irreparable injury, including without limitation: (a) interference in its effort to control the commercial and trade use of its Marks; (b) lost earnings as a result of diverted trade partners; and (c) damage to its reputation, goodwill, and the value of the Marks. Unless SCSW is preliminarily and permanently enjoined from such conduct, TEN will continue to suffer irreparable injury to its goodwill and reputation. TEN has no fully adequate remedy at law.

///

///

9

# FIRST CLAIM FOR RELIEF

## Federal Unfair Competition and False Designation of Origin

## (15 U.S.C. §1125 (a))

57.   Plaintiff incorporates by this reference each and every allegation of paragraphs 1 through 56, inclusive.

58.   Defendant's use of the Marks and Related Marks misrepresents and falsely suggests to the general public and trade the origin and sources of the Events and its goods and services and creates a likelihood of confusion by the trade and the consuming public as to the source, sponsorship, and endorsement of the Events and such goods and services.

59.   Defendant's unlawful and unauthorized use of the Marks and Related Marks creates the express and implied misrepresentations that Defendant's goods and services are authorized, endorsed, or approved by Plaintiff, when it is not.

60.   Defendant's unlawful and unauthorized use of the Marks and Related Marks creates the express and implied misrepresentations that Defendant is the owner of the Marks , when it is not.

61.   Defendant's conduct as described above is done willfully with knowledge of and/or reckless disregard for Plaintiff's rights.

62.   Defendant's aforesaid acts violate Plaintiff's rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1), in that Defendant willfully and intentionally used and is using in connection with goods and services sold in commerce a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact likely to cause confusion or deceive the trade and the consuming public as to the origin, sponsorship, and/or approval of the Events and of Defendant's goods and services.

63.   As a result of Defendant's aforesaid conduct, Plaintiff has suffered

1    irreparable injury, including without limitation: (a) interference in its effort to control the

2    commercial and trade use of its Marks; (b) lost earnings as a result of diverted trade

3    partners; and (c) damage to its reputation, goodwill, and the value of the Marks. Unless

4    Defendant is preliminarily and permanently enjoined from such conduct, Plaintiff will

5    continue to suffer irreparable injury to its goodwill and reputation.  Plaintiff has no fully

6    adequate remedy at law.

7    **SECOND CLAIM FOR RELIEF**

8    **Breach of Contract**

9         64.     Plaintiff incorporates by this reference each and every allegation of

10    paragraphs 1 through 63, inclusive.

11         65.     TEN and SCSW entered into the Agreement for TEN to license the Marks to

12    SCSW for use related to the Events in exchange for annual payment.

13         66.     SCSW breached the Agreement by registering

14    "SUPERCHEVY.COMSHOW" in Texas, by seeking to register "SUPER CHEVY

15    SHOW" with the United States Patent and Trademark Office, by repudiating the

16    Agreement, and by failing to pay and perform according to the terms of the Agreement.

17         67.     As a direct, proximate, and reasonably foreseeable consequence of SCSW's

18    breaches of the Agreement, TEN has been damaged in an amount to be determined at

19    trial, but reasonably believed to exceed $500,000.

20    **THIRD CLAIM FOR RELIEF**

21    **Unfair Competition**

22    **(Business & Professions Code § 17200)**

23         68.     Plaintiff incorporates by this reference each and every allegation of

24    paragraphs 1 through 67, inclusive.

25         69.     Plaintiff has developed valuable goodwill in the Marks.

26         70.     Since October 2, 2014, and continuing after November 17, 2014, Defendant

27

28

11

COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT,<br>UNFAIR COMPETITION/FALSE DESIGNATION<br>OF ORIGIN, AND FALSE ADVERTISING

1  has committed, and continues to commit, acts of unfair competition, as defined by

2  California Business and Professions Code § 17200, and have caused, and are causing

3  actual damages to Plaintiff by engaging in the following unlawful practices:

4      71.    Defendant's knowing and willful unauthorized use of the Marks and Related

5  Marks to deceive and mislead the Track-owners, Velocity, members of the media, the

6  trade, and the consuming public into assuming that Defendant is the owner of the Marks

7  is to the detriment of Plaintiff and the unjust enrichment of Defendant.

8      72.    Defendant has knowingly and willfully misappropriated and used the Marks

9  without Plaintiff's authorization and in competition with Plaintiff's goods and services.

10      73.    As a result of Defendant's aforesaid conduct, Plaintiff has suffered

11  irreparable injury, including without limitation: (a) interference in its effort to control the

12  commercial and trade use of its Marks; (b) lost earnings as a result of diverted trade

13  partners; and (c) damage to its reputation, goodwill, and the value of the Marks. Unless

14  Defendant is preliminarily and permanently enjoined from such conduct, Plaintiff will

15  continue to suffer irreparable injury to its goodwill and reputation.  Plaintiff has no fully

16  adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

**False Advertising**

**(Business & Professions Code § 17500)**

20      74.    Plaintiff incorporates by this reference each and every allegation of

21  paragraphs 1 through 73, inclusive.

22      75.    Since October 2, 2014, and continuing after November 17, 2014, Defendant

23  has committed, and continues to commit, acts of untrue and misleading advertising, as

24  defined by California Business and Professions Code § 17500, by engaging in the acts

25  and practices described in paragraphs 1-56 herein with the intent to induce the Track-

26  owners, Velocity, media, trade, and the consuming public to enter into contracts with

12

COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT,
UNFAIR COMPETITION/FALSE DESIGNATION
OF ORIGIN, AND FALSE ADVERTISING

1  Defendant or purchase Defendant's goods and services.

2     76. Defendant's knowing and willful unauthorized use of the Marks and Related

3  Marks to deceive and mislead the Track-owners, Velocity, members of the media, the

4  trade, and the consuming public into assuming that Defendant is the owner of the Marks

5  is to the detriment of Plaintiff and the unjust enrichment of Defendant.

6     77. Defendant's representations are false. Plaintiff is the owner and has senior

7  rights to the Marks.

8     78. Defendant is fully aware that Plaintiff is the owner of the Marks has known

9  this while making such misrepresentations.

10    79. The acts of untrue and misleading advertising by Defendant described herein

11 present a continuing threat to members of trade and consuming public in that the trade

12 and consuming public are being and will be deceived in thinking that Defendant is the

13 rightful licensor of the Marks, when in fact Plaintiff is the rightful licensor of the Marks.

14    80. As a result of Defendant's aforesaid conduct, Plaintiff has suffered

15 irreparable injury, including without limitation: (a) interference in its effort to control the

16 commercial and trade use of its Marks; (b) lost earnings as a result of diverted trade

17 partners; and (c) damage to its reputation, goodwill, and the value of the Marks. Unless

18 Defendant is preliminarily and permanently enjoined from such conduct, Plaintiff will

19 continue to suffer irreparable injury to its goodwill and reputation.  Plaintiff and the other

20 members of the trade and consuming public have no fully adequate remedy at law.

21                           **PRAYER**

22    WHEREFORE, Plaintiff TEN: The Enthusiast Network Magazines, LLC, prays for

23 relief against defendant SCSW, Inc. as follows:

24     a. Adjudging and Declaring that Plaintiff's Marks have been infringed as a direct

25        and proximate result of the willful acts of Defendant as set forth in this

26        complaint, in violation of Plaintiff's rights under section 43(a) of the Lanham

27

28

Act, 15 U.S.C. §1125(a), and under California unfair competition law (Business And Professions Code Section 17200 et seq.).

b. Decreeing that Defendant, its agents, servants, employees, officers, successors and assigns, and all persons, firms and corporations acting in concert or participation with Defendant or on Defendant's behalf, are preliminarily and permanently restrained, enjoined, and prohibited, from:

     i. Using the Marks and Related Marks, Plaintiff's Marks, or any colorable imitations, translations, transliterations, or derivatives of Plaintiff's Marks in connection with the Events, the Goods and Services, or any goods and services related to the Events; and

     ii. Using the Marks and Related Marks, Plaintiff's Marks, or any colorable imitations, translations, transliterations, or derivatives of Plaintiff's Marks to identify, advertise, market, or promote any of the Events, the Goods and Services, or any goods and services related to the Events; and

     iii. Using any trademark, service mark, logo, design or trade name that falsely represents or has the effect of falsely representing that Defendant's is sponsored by, authorized by, or in any way associated with Plaintiff; and

     iv. Using any domain name containing the word "SUPERCHEVY" or any word or phrase confusingly similar thereto on or in connection with the Events, the Goods and Services, or any goods and services related to the Events; and

     v. Infringing Plaintiff's Marks; and

     vi. Falsely representing itself or its affiliates as being associated with or sponsored by Plaintiff, or engaging in any act which is likely to

14

cause members of the trade or public falsely to believe that Defendant or its affiliates are associated with Plaintiff or that Plaintiff is associated with Defendant; and

   vii.  Falsely representing itself or its affiliates as being the owners of the Marks or have authority to license the Marks; and

  viii.  Doing any other act or thing likely to cause the public or the trade to believe that there is any connection between Defendant and Plaintiff.

b.  Adjudging, Awarding and Decreeing in favor of Plaintiff any additional injunctive relief not specified above as provided for in §34 of the Lanham Act, 15 U.S.C. §1116; and

c.  Ordering Defendant to file with this Court and serve upon Plaintiff within thirty (30) days after service of any injunction issued in this action, a written report under oath, confirming Defendant's compliance with paragraphs (i) – (viii) set forth above, including all subparts, and setting forth in detail the steps taken by Defendant to so comply.

d.  Awarding Plaintiff damages in an amount to be determined at trial but equal to treble the greater of Defendant's profits or Plaintiff's actual damages, or in the alternative statutory damages for each mark counterfeited by Defendant, plus pre-judgment and post-judgment interest, costs and attorneys' fees, pursuant to Plaintiff's claims for trademark infringement, and unfair competition; and

e.  Awarding Plaintiff damages pursuant to §35 of the Lanham Act, 15 U.S.C. §1117 in an amount equal to the greater of Plaintiff's actual damages or Defendant's profits resulting from the use, advertising, marketing or promotion of the Marks and Related Marks in connection

15

**COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT, UNFAIR COMPETITION/FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING**

with the Events, the Goods and Services, or any goods and services related to the Events; and

   f.  Awarding Plaintiff damages in an amount to be determined at trial, but reasonably believed to exceed $500,000; and

   g.  Awarding Plaintiff such sums as are necessary to place, or to compensate Plaintiff for placing, corrective advertising; and

   h.  Ordering the United States Patent & Trademark Office, pursuant to the Court's power under 15 U.S.C. §1119, to reject and cancel the U.S. Trademark Application for Registration of the trademark 'SUPER CHEVY SHOW' (cited as US Trademark Application Serial Number 86450668); and

   i.  Granting Plaintiff such other and further relief as this Court deems to be just, proper, and equitable.

Dated:  March 27, 2015

**ZUKERMAN GORE BRANDEIS**
**& CROSSMAN, LLP**
John K. Crossman (*pro hac vice to be filed*)
Vyasa M. Murthy(*pro hac vice to be filed*)

**NOSSAMAN LLP**
STEPHEN P. WIMAN

By: _____
       STEPHEN P. WIMAN

Attorneys for Plaintiff TEN: The Enthusiast
Network Magazines, LLC

16

**COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT,**
**UNFAIR COMPETITION/FALSE DESIGNATION**
**OF ORIGIN, AND FALSE ADVERTISING**

1

## **JURY DEMAND**

2        Plaintiff TEN: The Enthusiast Network Magazines, LLC, requests a trial by jury

3  for all claims alleged herein.

4  Dated:  March 27, 2015                      NOSSAMAN LLP
                                               STEPHEN P. WIMAN
5
6                                              By: _____
7                                                   STEPHEN P. WIMAN

8                                              Attorneys for Plaintiff TEN: The Enthusiast
                                                Network Magazines, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT,
UNFAIR COMPETITION/FALSE DESIGNATION
OF ORIGIN, AND FALSE ADVERTISING